**The PROCTER & GAMBLE COMPANY, Plaintiff,**

v.

**BANKERS TRUST COMPANY and BT Securities Corporation, Defendants.**

No. C–1–94–735.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 3, 1995.

Thomas S. Calder, John D. Luken, Dinsmore & Shohl, Cincinnati, OH, Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, James J. Johnson, General Counsel, Gary Hagopian, Procter & Gamble Co., Cincinnati, OH, Matthew Gluck, Fried, Frank, Harris, Shriver & Jacobson, New York City, for P & G.

Thomas Ridgley, Glenn V. Whitaker, Daniel J. Buckley, Vorys, Sater, Seymour & Pease, Cincinnati, OH, Michael A. Cooper, Richard H. Klapper, Sullivan & Cromwell, New York City, Michael E. Wiles, Debevoise & Plimpton, New York City, for Bankers Trust.

Richard M. Goehler, Christopher Ehrman, Frost & Jacobs, Cincinnati, OH, Victor A. Kovner, Lankenau Kovner & Kurtz, New York City (Kenneth M. Vittor, Sr. Vice Pres. & General Counsel, The McGraw–Hill Cos., Inc., New York City, of counsel), for McGraw–Hill.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT

FEIKENS, District Judge, Sitting by Designation.

In this cause of action, plaintiff Procter & Gamble filed its original complaint on August 27, 1994, and its first amended complaint on February 6, 1995. Plaintiff alleged that defendants Bankers Trust Company and BT Securities Corporation had engaged in fraudulent conduct to induce plaintiff to enter into and to remain in two complex leveraged derivative transactions. Plaintiff subsequently served broad discovery requests upon defendants. In addition to information already in the public domain,[1] plaintiff received approximately 6500 tape recordings and 300,000 pages of other sensitive materials from the defendants.

Based upon this discovered information, P & G filed a motion for leave to amend its complaint on September 1, 1995, to assert claims arising under Title IX of the Organized Crime Control Act of 1970 (RICO) (18

---

1. This public information includes pleadings from *P.T. Adimitra Rayapratama v. Bankers Trust Co., et al.*, 95 Civ. 0786, 1995 WL 495634 (JSM) (D.N.Y.1995) and *Stephen M. Rales, et al. v. Bankers Trust Co., et al.*, Case No. 94–0855 (D.D.C.1994). Plaintiff also received a December 4, 1994, formal written agreement between Bankers Trust, BT Securities, their parent BT Holding, and the Federal Reserve Bank of New York in which Bankers Trust agreed to substantial changes in their leveraged derivative transaction business. Finally, plaintiff also acquired an order of the Securities and Exchange Commission (SEC), consented to by BT Securities, in which the SEC found that BT Securities had willfully violated § 17(a) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10b–5 promulgated thereunder.

U.S.C. § 1961, *et seq.*). The memorandum in support of the motion, the proposed second amended complaint, and a RICO case statement, which all included confidential discovery information, were filed under seal, pursuant to a stipulated protective order entered by the late Hon. Carl Rubin on January 17, 1995.

I now address plaintiff's motion to amend its complaint and defendants' arguments against granting this motion. Because I grant plaintiff's motion to amend, I also consider defendants' argument that the sealed supporting documents should remain sealed pursuant to Judge Rubin's protective order.

## I. Plaintiff's Motion to Amend Its Complaint

■ Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." The United States Court of Appeals for the Sixth Circuit has recognized that Rule 15(a) embodies a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *General Electric Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir.1990). *See also Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir.1987) ("the case law in this Circuit manifests 'liberality in allowing amendments to a complaint.'"). In considering motions to amend a complaint, the court looks to six factors: (1) whether there was undue delay in filing; (2) any lack of notice to the opposing party; (3) bad faith by the moving party; (4) repeated failures to cure pleading deficiencies by amendment; (5) undue prejudice to the opposing party; and (6) the futility of amendment. *General Electric*, 916 F.2d at 1130.

Defendants contend that the proposed amendment to plaintiff's complaint should be disallowed because (1) its filing was untimely; (2) the futility of allowing the amendment because plaintiff's allegations fail to establish the existence of a RICO enterprise distinct from the defendants; and (3) plaintiff has failed to allege a cognizable RICO injury. Defendants also argue that the predicate acts alleged by plaintiffs should be reduced to those that plaintiff can plead with sufficient particularity and prove at trial.

■ I reject defendants' claim that plaintiff has unduly delayed in the filing of this motion. Due to Judge Rubin's illness and death, there were a number of months in which the case could not proceed as scheduled. To claim, as defendants do, that this RICO claim should have been asserted, if at all, by April 15, 1995, is untenable and denied. Defendants' assertions that the proposed amended complaint motion came as the result of plaintiff's bad faith and that defendants would be substantially prejudiced by the late inclusion of the RICO claims are likewise denied. As to the assertion of prejudice, all evidence at some point is prejudicial. Plaintiff has proceeded in a timely, responsible manner given the circumstances of this case.

■ Defendants' arguments that plaintiff's allegations fail to establish the existence of a RICO enterprise distinct from the defendants should, if at all, be made the subject of a 12(b)(6) motion. I note that even if defendants do file a motion under Fed.R.Civ.P. 12(b)(6) to dismiss, *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir.1995), teaches that the allegations in a civil RICO complaint must be accepted as true, and that a court may not dismiss such a complaint for failure to state a claim based merely on disbelief of the complaint's factual allegations.

Defendants' remaining claim that the predicate acts should be reduced to those that plaintiff can plead and prove is likewise untenable and denied. As discussed above, plaintiff has pleaded in accordance with the rules and requirements of the Federal Rules of Civil Procedure and the applicable case law.

## II. The Protective Order and the Granted Motion to Amend

■ Defendants have argued that if this court grants plaintiff's motion to amend its complaint, the memorandum supporting the motion to amend, the proposed second amended complaint, and the RICO case statement should remain under seal pursuant to the protective order entered by Judge Rubin. At the outset, it is important to note

that there is a generally a strong presumption of access to judicial records under both the common law and the First Amendment. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984). The First Amendment and the common law both limit a court's discretion to seal court documents. *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1178 (6th Cir.1983) *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

Defendants preliminarily argue that they should continue to receive the benefit of Judge Rubin's protective order because they have proceeded in discovery under an expectation that it would continue to be enforced as to their confidential documents. However, I note that the order itself expressly contemplates that the court will determine the extent to which discovery materials marked "confidential" will remain confidential when one of the parties seeks to use the material at trial "or in other proceedings before the Court." (Stipulated Protective Order Paragraph 14).

Defendants also argue that the sealed documents at issue are the fruits of discovery and can therefore continue to be protected under the teachings of *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In *Seattle Times,* the Supreme Court specifically addressed whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through protected, pretrial discovery process. The Court held that where a protective order is entered on a showing of good cause, *is limited to the context of pre-trial discovery,* and does not restrict the dissemination of the information if it is gained from sources other than protected discovery, such an order may not offend the First Amendment. *Seattle Times,* 467 U.S. at 37, 104 S.Ct. at 2209. Therefore, the question presented is whether the documents at issue continue to be pretrial discovery materials after I have granted plaintiff's motion to amend.

The general rule is that protected discovery information ceases to be pretrial discovery material when it becomes part of the judicial record. Courts have held that court-protected materials obtained in the course of protected pretrial discovery, which are used in connection with motions (such as motions to amend) seeking judicial action, are no longer simply the fruits of discovery when filed. *See e.g., Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249 (4th Cir.1988); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157 (3d Cir.1993); *Republic of the Philippines v. Westinghouse Elec. Corp.,* 139 F.R.D. 50 (D.C.N.J.1991), *stay denied,* 949 F.2d 653 (3d Cir.1991). While the protective order in this case specifically provides that confidential materials that are filed with the Court, including pleadings, are to be sealed, this cannot, absent extraordinary circumstances, remain so indefinitely. Protective orders in cases such as this are entered to facilitate efficient pretrial discovery that does not require extensive court involvement. Once the court is required to become involved, as in a motion to amend, it can and should determine anew whether the documents at issue should remain sealed. Having reviewed the documents at issue, and given the presumption of access to judicial records and the general rule that discovery information ceases to be pretrial discovery material once filed, I have concluded that the sealed documents should no longer be protected.

It may be as defendants argue that *Seattle Times* permits the continued protection of the documents at issue if a substantial governmental interest can be shown for so doing. *Seattle Times Co.,* 467 U.S. at 32, 104 S.Ct. at 2207. However, no substantial governmental interest has been shown for the continued protection of the previously sealed documents now that I have had an opportunity to consider the motion to amend. During the hearing on this matter, I repeatedly asked the defendants to provide me a substantial governmental interest in suppressing the proposed second amended complaint, the supporting memorandum, and the case statement. They could point to no such ·interest. While the defendants have an interest personal to themselves not to have these materi-

als revealed publicly, I cannot keep them from public view for such reasons.

In another Opinion and Order entered simultaneously in this case, I held that The McGraw–Hill Companies, doing business as *Business Week,* could not publish the sealed materials which it had obtained unlawfully in violation of a court order. I now hold separately that the grant of plaintiff's motion to amend its complaint to set forth a RICO count places the formerly sealed memorandum in support of the motion to amend, the proposed second amended complaint, and the RICO case statement into the public domain. In so doing, I also release defendants' opposition papers to plaintiff's motion to amend. This Order becomes effective October 3, 1995 at 4:00 p.m.

IT IS SO ORDERED.